UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GERALD LOPES

v.  C.A. No. 09-263 ML

MAYOR OF PAWTUCKET, et al.

## REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge

Gerald Lopes, *pro se*, an inmate at the Adult Correctional Institutions (the "ACI") in Cranston, Rhode Island, filed a complaint pursuant to 42 U.S.C. § 1983 ("§ 1983") naming as defendants: the Mayor of Pawtucket; 11 Pawtucket Police Department members; an Assistant Attorney General of Rhode Island; and two employees of the crime lab division (the "Crime Lab") of the Rhode Island Department of Health (the "RIDOH") (the "Complaint" or "Cmpt.") (Docket # 1). The Court previously granted Plaintiff leave to proceed *in forma pauperis*. Therefore, pursuant to 28 U.S.C. § 1915(e)(2) ("§ 1915(e)(2)"), I have screened the Complaint. As discussed below, having found that the claims in the Complaint fail to state claims upon which relief may be granted, I recommend this action be dismissed.

## BACKGROUND

The following background set forth in the Complaint, including the attachments thereto, is taken as true for the purposes of this Report and Recommendation.

### I. 2005 Breaking and Entering

In December 2005, someone broke into the home of Defendant Assistant Attorney General Stacey Veroni (the "2005 B&E"), and Ms. Veroni claimed jewelry was stolen. Defendants Detectives Magill, Griffin, Horrocks, and Shea investigated the crime. Feces found behind the house that might have come from the perpetrator were either never tested or the tests were hidden because they did not reveal a DNA match with Plaintiff. Detective Horrocks sent a red substance allegedly found on a window hinge at the house to the Crime Lab for testing. The test results, which were signed off on by Defendant RIDOH Supervisor Robin Smith, stated:

> A chemical test indicated the presence of blood on the latent lift with blood sample from the bedroom window. Immunological examination failed to confirm the presence of blood.

Cmpt., at Exh. A, at 1.

1

## II.   2006 Home Invasion and Subsequent Searches

On December 15, 2006, two men invaded an apartment in Pawtucket (the "2006 Home Invasion"). The victims stated that one of the men rifled through the bedroom, but did not state that jewelry was taken. The Pawtucket police seized the car identified as the one used by the two men, traced the car to Plaintiff, and sent certain items found inside the car to the Crime Lab for DNA analysis. Defendant Detective Magill obtained a search warrant on December 19, 2006 to search Plaintiff's apartment; 'jewelry' was included within the scope of the search warrant.

Defendants Detectives Magill and Griffin executed the search warrant the next day when the home was unoccupied. The Detectives seized items, including a ring which Plaintiff had never seen (and, thus, Plaintiff contends was planted). Among the items seized was jewelry that had been stolen in other crimes, which, according to the police narrative attached as an exhibit to the Complaint (the "Police Narrative"), was in plain view of the Detectives executing the search warrant. Cmpt., Exh. C. A second warrant was thereafter obtained to collect a buccal swab from Plaintiff in order to compare his DNA with DNA found on items seized from the car.

## III.   Allegedly Fabricated Blood Match, Plea, and Plaintiff's Theories

In July 2007, Defendant RIDOH analyst Sharon Mallard informed Detective Griffin that Plaintiff's known DNA sample matched the blood sample obtained from the bedroom window of the 2005 B&E. Plaintiff attaches to the Complaint a November 14, 2007 RIDOH Supplemental Report, signed by both RIDOH Defendants, reporting the match. Cmpt., at Exh. A, 4-5. Plaintiff emphasizes that, because (i) he was never at the location of the 2005 B&E and (ii) the 2005 report stated that "immunological examination failed to confirm the presence of blood," the 2007 report, detecting a DNA match with his DNA, must have been fabricated.

The Complaint implies, although it does not specifically state or provide any details, that Plaintiff was indicted on charges related to the 2005 B&E and that he plead *nolo contendere* and is serving a sentence in connection with such charges. Plaintiff urges that his criminal defense attorney (i) was pressured, either by the Defendants or by the fabricated blood match evidence, to ignore Plaintiff's claims of innocence and (ii) used the fabricated evidence as leverage to "coerce a confession" from Plaintiff on the charges. Cmpt., at 4 & 33.

Plaintiff theorizes that Defendants were motivated to falsely incriminate him on the 2005 B&E charges because (i) unnamed Pawtucket police officers, whom he claims repeatedly harassed him, "didn't like that [he] lived in their neighborhood while being black," Cmpt., at 6; (ii) the Defendant Detectives disliked him because previous charges against him had been

2

dismissed, Cmpt., at 21; (iii) Defendant Veroni wanted the 2005 B&E investigation closed so she could get insurance money for the jewelry she claimed was stolen (including jewelry which, Plaintiff surmises, was not actually stolen), Cmpt., at 29; and (iv) Defendant Detectives and/or Veroni used the power of their positions as detectives and/or Assistant Attorney General to coerce Defendant RIDOH employees to fabricate the DNA results, Cmpt., at 18, 21, 24, & 29.

## IV. Claims

In the Complaint, Plaintiff urges that the facts give rise to an action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999 (1971), for the violation of his constitutional rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. The Complaint also references 42 U.S.C. § 1985 ("§ 1985") and the Rhode Island Constitution. As relief, Plaintiff seeks (i) punishment of Defendants (through orders requiring an investigation into his claims against Defendants, removal of Defendants from their employment positions, and criminal proceedings against certain Defendants); (ii) a stay preserving his right to bring tort claims against Defendants at a later time; and (ii) payment of fees by Defendants.

## DISCUSSION

## I. Screening Under § 1915(e)(2) and § 1915A

In connection with proceedings *in forma pauperis* and complaints filed by prisoners against governmental officers or employees, § 1915(e)(2) and 28 U.S.C. § 1915A, respectively, instruct the Court to dismiss a case at any time if the Court determines that the action, *inter alia*, fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2) & § 1915A(b).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B) and § 1915A is identical to the legal standard used when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In making this determination, the Court must accept the plaintiff's factual allegations as true and construe them in the light most favorable to the plaintiff, although the Court need not credit bald assertions or unverifiable conclusions. *Ashcroft v. Iqbal,* -- U.S. --, 129 S.Ct. 1937, 1949-1950 (2009). Further, the Court must review pleadings of a *pro se* plaintiff liberally. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285 (1976). A claim fails to state a claim for which relief may be granted if the factual allegations fail to "raise [plaintiff's] right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007); *see also Iqbal,* 129 S.Ct. at 1949-1951 (requiring claims be plausible, not just possible); Fed.R.Civ.P. 8(a)(2).

3

## II. Preliminary Issues

### A. Improper Rubric

As a threshold matter, Plaintiff improperly urges that his claim invokes *Bivens* due to the "shear [sic] number of constitutional violations." Cmpt., at 3. *Bivens* applies to claims involving deprivations of federally protected rights caused by "a *federal agent* acting under color of his authority." 403 U.S. at 389 (emphasis added). Thus, as Plaintiff is suing state and city employees for their actions under color of state law, Plaintiff's claims fall under the rubric of 42 U.S.C. § 1983 ("§ 1983") rather than *Bivens*. *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980)(For a § 1983 action, the conduct complained of must have (i) been committed by a person acting under color of state law and (ii) deprived the plaintiff of a constitutional or federal statutory right). However, as Plaintiff is proceeding *pro se* in this action, for purposes of this Report and Recommendation, his claims will be analyzed under § 1983.

### B. Favorable Termination Requirement and Possibility of A Stay

Here, all of Plaintiff's claims allege corrupt activity by Defendants designed to frame and convict Plaintiff for the 2005 B&E. However, although the Complaint states that Plaintiff pled *nolo contendere* in connection with the 2005 B&E, it does not state that the conviction has been overturned. (Plaintiff notes that he intends to raise the issue of ineffective assistance of counsel on post-conviction relief, Cmpt., at 32, further suggesting that he has not obtained a favorable termination with respect to the conviction at issue here.) Accordingly, it appears that Plaintiff's claims, which "would necessarily imply the invalidity" of the 2005 B&E conviction, are currently barred by the favorable termination requirement described in *Heck v. Humphrey*. 512 U.S. 477, 487, 114 S.Ct. 2364 (1994)(a civil rights claim should be dismissed if a judgment in favor of the plaintiff "would necessarily imply the invalidity of [the plaintiff's] conviction," unless the plaintiff proves that the conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus").

Further, with respect to the Fourth Amendment malicious prosecution claims at the heart of the Complaint, favorable termination is required as an element of the cause of action and for the claim to accrue. *See Jones v. City of Boston*, 135 Fed.Appx. 439, 440 (1st Cir. 2005)(citing, inter alia, *Heck*, 512 U.S. at 483-84; *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001)).

However, with the exception of the malicious prosecution claims, a current *Heck* bar on Plaintiff's claims does not end the inquiry. To the extent that (i) Plaintiff sets forth potentially

4

viable claims which accrue prior to a favorable termination ruling and (ii) Plaintiff's underlying conviction is not final, to preserve such claims from expiring, the Court could exercise its discretion to grant a stay until a favorable termination has either been obtained or is no longer available. *See Wallace v. Kato*, 549 U.S. 384, 393-94, 127 S.Ct. 1091 (2007)(citations omitted)("If a plaintiff files a false-arrest claim before he has been convicted ..., it is within the power of the district court ... to stay the civil action until the criminal case ... is ended. ... If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit."); *Jackim v. City of Brooklyn*, No. 05-1678, 2010 WL 4923492, at *3 (N.D.Ohio Nov. 29, 2010)(allowed stay of *Heck*-barred claim until plaintiff exhausted appeals in criminal case, but rejected stay while clemency request was pending because plaintiff's likelihood of success on such request was too remote); *Crooker v. Burns*, No. 06-30187 et al., 2010 WL 3781877, at *1 (D.Mass. Sept. 21, 2010)(stayed *Heck*-barred claims until completion of criminal case, including any appeal thereof); *Smart v. Township of Gloucester*, No. 06-138, 2007 WL 1186043, at *2 (D.N.J. Apr. 20, 2007)(recognizing that a stay necessitated under *Heck/Kato* may extend for years while post-conviction relief of the criminal conviction at issue is sought).

Here, however, the Complaint provides no justification for a stay. Not only does Plaintiff fail to include adequate information regarding the status of the criminal conviction underlying this Complaint, but, as discussed below, the Complaint does not set forth any potentially viable claims on which the statute of limitations might already have begun to run.

### C.     Improper Relief Sought

Finally Plaintiff's claims seeking to have the Court investigate or criminally charge (or order the investigation or criminal charge of) Defendants for their roles in connection with his conviction for the 2005 B&E are misplaced. First, the Court will not grant injunctive relief designed to punish Defendants for their alleged actions rather than to deter present or threatened future harm against Plaintiff. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 310, 102 S.Ct. 1798 (1982)(noting that purpose of injunctive relief is to deter future violations, not to punish past ones); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989)(private citizen has no standing to initiate criminal prosecution); *see also Connecticut v. Massachusetts*, 51 S.Ct. 286, 291, 282 U.S. 660 (1931)(existing or presently threatened injuries, rather than mere fear of injury liable to occur at indefinite future time, required for injunction). Second, as noted above, Plaintiff may not use this civil rights action as a collateral attack on his state conviction, as granting the requested

injunctive relief would imply. See *Heck*, 512 U.S. at 486 ("civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments").

## III. Claims under § 1983

### A. Fourth Amendment

Plaintiff's primary allegations invoke the Fourth Amendment. Plaintiff alleges that various Defendants (i) conducted a search of his home without probable cause; (ii) planted evidence; and (ii) fabricated evidence in connection with the unlawful imprisonment of Plaintiff.

First, Plaintiff claims that Defendants Magill and Griffin violated his rights by obtaining an overbroad warrant to search for jewelry (despite the 2006 Home Invasion victims not stating jewelry was stolen) and then conducting a search for and seizing jewelry without probable cause. The Fourth Amendment prohibits searches without probable cause, and probable cause is absent, even in the face of a search warrant, if the warrant was obtained based on material false statements. *See Aponte Matos v. Toledo Dávila*, 135 F.3d 182, 187 (1st Cir. 1998). However, although the Complaint urges that Defendant Magill gained the search warrant under false pretenses, (i) the Complaint provides no factual allegations indicating that Defendant Magill offered material false statements to obtain the warrant, and (ii) the complaint signed by Magill in support of the warrant, which Plaintiff attaches as an exhibit to the Complaint, does not include any references to jewelry. Cmpt., Exh. A, at 9. Further, the Police Narrative, which Plaintiff does not contest, explains that jewelry seized during the search pursuant to the warrant was in plain view and appeared to be evidence in other ongoing criminal investigations. Cmpt., Exh. C, at 3-4. Thus, as Defendants had probable cause to search Plaintiff's home in connection with the 2006 Home Invasion, even if the warrant was overbroad, the facts in the Complaint suggest that the seizure of jewelry was justified by the plain view exception to the search warrant requirement. *See Bilida v. McCleod*, 41 F.Supp.2d 142, 150 (D.R.I. 1999)(law enforcement agents may seize evidence in plain view if the evidentiary value is immediately apparent during a lawful search even though the items seized are not included within the scope of the warrant)(citing *United States v. Robles*, 45 F.3d 1, 6 (1st Cir. 1995)). Accordingly, Plaintiff's claims against Defendants Magill and Griffin regarding an unlawful search fail to state claims on which relief may be granted and should be dismissed with prejudice rather than stayed.

Second, the Complaint alleges that Detectives Magill and Griffin violated Plaintiff's rights by planting and then seizing a ring during the search. Although the planting of incriminating evidence may give rise to a Fourth Amendment claim, such claim must describe

6

the deprivation of a federally-protected right, such as unlawful seizure, resulting from such actions. *See Nieves v. McSweeney*, 241 F.3d 46, 54 (1st Cir. 2001); *Medina v. Toledo*, 718 F.Supp.2d 194, 207 & 208-09 (D.P.R. Jun. 09, 2010). As Plaintiff does not state if or how such planted evidence was used against him, the claim fails to state a claim on which relief may be granted and should be dismissed rather than stayed.

Finally, the Complaint alleges that Defendants RIDOH Supervisor Smith and Analyst Mallard violated Plaintiff's rights by fabricating a report indicating that Plaintiff's DNA was found at the scene of the 2005 B&E, and that Defendants Detectives Magill, Griffin, Horrocks, and Shea and/or Assistant Attorney Veroni used their positions to coerce the RIDOH employees to fabricate such evidence. Plaintiff further speculates that Defendant Detective Horrocks may have hidden results from a DNA test of feces found at the scene indicating that the DNA did not match Plaintiff's DNA. Plaintiff urges that such falsified evidence was used to coerce him to plead *nolo contendere* to the 2005 B&E charges although he was not guilty, and thus caused his false and unlawful imprisonment. Claims for false imprisonment encompass claims for unlawful detention without legal process while claims for malicious prosecution involve claims for unlawful detention caused by the wrongful institution of the legal process. *Kato*, 594 U.S. at 389-90. Here, Plaintiff does not allege that he was unlawfully detained prior to the institution of the legal process. (For instance, he does not state that he was arrested without a warrant and held in prison prior to being arraigned by a judge.) Accordingly, he fails to state a claim for false imprisonment and no stay need be issued with respect to any such claims. Additionally, as noted above, to the extent that Plaintiff seeks to recover on claims that Defendants' actions amounted to malicious prosecution in violation of the Fourth Amendment, favorable termination of the underlying conviction is required both as an element of the claim and for the claim to accrue. *See Jones*, 135 Fed.Appx. at 440; *Figueroa v. Rivera*, 147 F.3d 77, 81 (1st Cir. 1998)(citing *Heck*, 512 U.S. at 487). Here, as Plaintiff has not alleged that his conviction on the 2005 B&E charge has been overturned or otherwise set aside, Plaintiff's malicious prosecution claims should be dismissed as premature rather than stayed.

### B. Other Amendments

Plaintiff's claims under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments should also be dismissed with prejudice rather than stayed. First, despite Plaintiff's claims that his First Amendment rights were violated because his false imprisonment impaired his "right to

be free," Cmpt. at p. 3, such claims do not implicate the First Amendment, U.S. CONST. amend. I (protecting rights related to speech, religion, assembly, and petitioning the government).

Second, Plaintiff contradicts his claim that he was deprived of his right to counsel under the Fifth and Sixth Amendments by revealing that he had an attorney in the criminal case. And, although Plaintiff implies that Defendants effectively denied him adequate counsel by coercing his attorney to pressure him to plead *nolo contendere*, the Complaint provides no factual allegations to support such a bald theory. *See Iqbal*, 129 S.Ct. at 1949 (a claim does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'")(citation omitted).

Third, as Plaintiff's claims here involve actions leading up to his conviction, rather than his treatment as a convicted prisoner, the Eighth Amendment is inapplicable. *See Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401 (1977)(the cruel and unusual punishments clause of the Eighth Amendment protects convicts and limits the type of punishment that is imposed).

Finally, the Fourteenth Amendment does not provide a source for Plaintiff's malicious prosecution claims. *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)(plurality opinion)(foreclosing reliance on substantive due process for a constitutional malicious prosecution claim); *Meehan v. Town of Plymouth*, 167 F.3d 85, 88 (1st Cir. 1999)(where the state's tort law recognizes a malicious prosecution cause of action, a § 1983 claim for malicious prosecution as a deprivation of procedural due process is barred)

Accordingly, not only are Plaintiff's claims under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments barred by *Heck's* favorable termination requirement, but they should be dismissed with prejudice rather than stayed because they fail to state claims on which relief may be granted.

### IV. Conspiracy under § 1985

To the extent Plaintiff asserts conspiracy claims under § 1985, the Complaint fails to allege facts necessary to support such claims. Specifically, the only sections of § 1985 that are potentially relevant here prohibit conspiracies to (i) impede, hinder, obstruct or defeat the due course of justice in any state court judicial proceeding, § 1985(2), clause two, and (ii) deprive any person or class of persons of the equal protection of the laws, § 1985(3). However, both of these provisions of § 1985 require proof of a "class-based, invidiously discriminatory animus." *Hahn v. Sargent*, 523 F.2d 461, 469 (1st Cir. 1975) (internal quotation marks omitted). Here, although Plaintiff theorizes in one line of the Complaint that the Pawtucket police "didn't like that [he] lived in their neighborhood while being black," Cmpt., at p. 6, such bald assertion

unsupported by any factual allegations or connected to any particular Defendant fails to establish the discriminatory animus required in support of claims under clause two of § 1985(2) or § 1985(3). *See Iqbal*, 129 S.Ct. at 1949 (requiring more than naked assertions).

Accordingly, I find that, to the extent the Complaint sets forth claims asserted pursuant to § 1985, such claims are not cognizable and recommend the same be dismissed with prejudice, rather than stayed.

## V. Supplemental State Law Claims

Finally, having recommended that the federal claims be dismissed, I further recommend that the Court decline to exercise jurisdiction over Plaintiff's remaining supplemental state law claims, and that such state law claims be dismissed without prejudice for want of jurisdiction. See 28 U.S.C. § 1367(c) (district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *see also Menebhi v. Mattos*, 183 F.Supp.2d 490, 505-506 (D.R.I.2002) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130 (1966)).

## CONCLUSION

For the reasons set forth above, I find that the federal claims in the Complaint are barred by the favorable termination requirement set forth in *Heck*. I further find that (i) the Fourth Amendment malicious prosecution claims are premature and (ii) the remaining federal claims fail to state claims on which relief may be granted, and, therefore, a stay would be inappropriate here. Accordingly, I recommend that (1) the Fourth Amendment malicious prosecution claims be DISMISSED without prejudice; (2) the remaining federal claims be DISMISSED with prejudice; and (3) the supplemental state law claims be DISMISSED without prejudice for lack of jurisdiction.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Fed.R.Civ.P. 72(b). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986) (per curiam).

_____
Jacob Hagopian
Senior United States Magistrate Judge
January 6, 2011